UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PRATT LAND & DEVELOPMENT, LLC,    )
                                  )
            Plaintiff,            )
                                  )
v.                                )        No. 1:19-cv-010
                                  )
CITY OF CHATTANOOGA, *et al*.,    )
                                  )
            Defendants.           )

## MEMORANDUM OPINION

This matter is before the Court on Defendant Chip Henderson's motion to dismiss [Doc. 12] and Memorandum in Support thereof [Doc. 13]. Plaintiff has responded [Doc. 20]. Defendant Henderson has not replied, and the time for doing so has long expired. *See* E.D. Tenn. L.R. 7.1(a). Plaintiff later filed a notice requesting oral argument on the motion to dismiss [Doc. 34]. The Court does not conduct oral argument on motions to dismiss as a matter of course and concludes that oral argument on this matter is unnecessary. For the reasons stated herein, Defendant Henderson's motion to dismiss [Doc. 12] will be **GRANTED**.

## I.    BACKGROUND

In its complaint, Plaintiff alleges that, in 2018, it purchased property located at 1001 Read's Lake Road in Chattanooga, Tennessee ("the Property"), along with several adjacent parcels, intending to develop multifamily housing on the Property, which was consistent with the Property's C-2 zoning classification. [Doc. 1-1, pp. 6-7]. Prior to 2002, the

Property had been zoned as C-1 Highway Commercial Zone, but in 2002, the C-1 category was removed, and the Property was rezoned to C-2 Convenience Commercial Zone, which permits the construction of dwellings including multifamily housing. [*Id*. at 6]. Plaintiff allegedly spent in excess of $100,000 on engineering, soil testing, surveying, and legal issues related to developing the multifamily housing on the Property. [*Id*. at 7].

Plaintiff alleges that in April 2018, Defendant Henderson introduced Resolution No. 29428, which directed the Chattanooga City Attorney's Office to file a zoning application on behalf of the Council requesting conditions be imposed on the use of the Property. [*Id*.]. This resolution was passed on April 24, 2018. [*Id*.]. The Council then proceeded to file a zoning application, Case No. 2018-0117 ("the Zoning Case") with the Chattanooga Hamilton County Regional Planning Authority ("the Planning Commission") on April 30, 2018. [*Id*. at 8]. In the Zoning Case, the Council sought to change the zoning of the property from C-2 to C-2 with Conditions. The Conditions would prohibit residential uses and allow only those permitted uses under the former C-1 zone classification. [*Id*.]. Plaintiff alleges that the Council did not seek to condition any other C-2 zoned property in the city, but targeted Plaintiff and the Property to prevent Plaintiff from developing multifamily housing. [*Id*. at 9].

The Planning Commission heard the Zoning Case on September 10, 2018, and ultimately recommended that the Council deny the Zoning Case, stating that the Zoning Case would set the precedent of the City rezoning a single property rather than a larger area. [*Id*. at 10]. Thereafter, the Council heard the matter at the October 9, 2018 Council meeting, at which counsel for Plaintiff spoke in favor of denying the Zoning Case. [*Id*. at

2

11]. Nevertheless, the Council voted to pass the Zoning Case on First Reading, and on October 16, 2018, the Council voted to approve Ordinance 13377, which amended the City of Chattanooga Zoning Ordinance to impose the conditions sought by the Zoning Case. [*Id*. at 12].

Plaintiff alleges that the passage of Ordinance 13377 was arbitrary and capricious and did not follow the requirements of the Zoning Ordinance and Tennessee law. [*Id*. at 12-13]. As a result of the ordinance, Plaintiff is unable to develop any residences on the Property. [*Id*. at 13]. Plaintiff states that none of the new permitted uses are economically feasible given the surrounding area, and therefore, the Property now has no market value. [*Id*. at 14].

Plaintiff seeks declaratory relief that the ordinance is invalid and that it has vested rights in the property (Counts 1 and 2). [*Id*. at 15-17]. Plaintiff also raises claims for violation of substantive due process under the Tennessee and U.S. constitutions (Counts 3 and 4), violation of equal protection under the Tennessee and U.S. constitutions (Counts 5 and 6), violation of procedural due process under the Tennessee and U.S. constitutions (Counts 7 and 8), violation of the takings clause of the Tennessee constitution (Count 9), inverse condemnation under Tenn. Code Ann. § 29-16-123 (Count 10), and a claim for attorneys' fees (Count 11). [*Id*. at 18-32].

## II.    STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

3

(2007). When considering a Rule 12(b)(6) motion, a court must treat all the well-pleaded allegations of the complaint as true and construe all the allegations in the light most favorable to the non-moving party. *DIRECTTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotation marks omitted). Dismissal under Rule 12(b)(6) "is proper when there is no set of facts that would allow the plaintiff to recover." *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993); *see also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

### III. ANALYSIS

#### a. Official Capacity

Henderson first argues that Plaintiff sued the City of Chattanooga on the same grounds as he sued Henderson in his official capacity, so the claims are duplicative. [Doc. 13, p. 5]. Henderson contends that, in his official capacity, he is not a separate, suable entity under the Civil Rights Act, and the claims raised are actually claims against the City itself. [*Id*. at 5-6]. In response, Plaintiff agrees to the dismissal of Henderson in his official capacity only. [Doc. 20, p. 2, n. 1]. In light of Plaintiff's concession on this matter, the Court will **GRANT** Henderson's motion to dismiss as to any claims raised against him in

his official capacity. All claims raised against Henderson in his official capacity will be **DISMISSED**.

### b. Legislative Immunity

Henderson next argues that when he voted for the zoning change, he was acting in his legislative capacity, and therefore, he enjoys absolute immunity from suit. [Doc. 13 at 6]. Henderson notes that the Sixth Circuit has extended absolute immunity to local legislators. [*Id*. at 7].

Plaintiff responds that the doctrine of legislative immunity applies only to local legislators engaging in legitimate legislative activity, not when a zoning action singles out specific individuals for disparate treatment. [Doc. 20 at 2]. First, Plaintiff alleges that, because Henderson's actions regarding the zoning ordinance singled out a specific individual, it was administrative, rather than legislative, and therefore, not entitled to immunity under Sixth Circuit law. [*Id*. at 3]. Second, Plaintiff contends that, even traditionally legislative actions that are taken in bad faith, because of corruption, or in furtherance of personal, rather than public, interests, are not protected by legislative immunity. [*Id*.]. Plaintiff contends that he has alleged, and will prove, that Henderson is not entitled to legislative immunity because his actions go well beyond voting on a piece of rezoning legislation and instead encompass a "months-long crusade to strip [Plaintiff] of the right to develop its property." [*Id*. at 4].

The Court first notes that Plaintiff's arguments against legislative immunity rely heavily on arguments from *Haskell v. Washington Township*, 864 F.2d 1266, 1277-78 (6th Cir. 1988), a case which has received severe negative treatment since its decision and has

5

been mostly overruled regarding legislative immunity by the Supreme Court in *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998). Even the cases Plaintiff references are distinguishable from this case in that motions to dismiss were denied, not for passing a new zoning ordinance, but for other reasons. *See Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 760 (E.D. Mich. 2013) (holding that the individual defendants were not entitled to legislative immunity with respect to their decision to deny the plaintiff's rezoning application, but were entitled to immunity regarding the decision to not schedule a hearing before the Board of Trustees to address the application); *Jaggers v. City of Alexandria*, No. 08-5213, 2009 WL 233244, at *4 (6th Cir. Feb. 2, 2009) (applying the standard set forth in *Bogan*, 523 U.S. at 54-55, and finding that introducing a budget and voting on and signing an ordinance into law were legislative for purposes of legislative immunity, but defendants could not establish as a matter of law that they were entitled to immunity regarding the decision to deny the plaintiff's proposed development plan).

Further, Plaintiff's second argument, that Henderson is not entitled to legislative immunity as a result of bad faith, corruption, or primarily in furtherance of personal instead of public interests also relies solely on *Haskell*, 864 F.2d at 1278. *See EJS Properties, LLC v. City of Toledo*, 651 F. Supp. 2d 743, 752 (N.D. Ohio 2009), *aff'd in part*, 698 F.3d 845 (6th Cir. 2012) (finding that a city councilman was not entitled to legislative immunity where he sought money in exchange for passage of a re-zoning ordinance) (the 6th Cir. did not address the issue of legislative immunity in its opinion affirming the district court's decision to grant summary judgment to the defendants on all constitutional claims). As this

6

case is persuasive authority and not binding, the Court rejects Plaintiff's argument as it is directly contradicted by the Supreme Court in *Bogan*, 523 U.S. at 54-55.

The Supreme Court has established that local legislators are absolutely immune from liability for legislative activities. *Bogan*, *supra*, at 49. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. Legislative immunity applies if an act is both legislative in form and legislative in substance. *Guindon v. Twp. of Dundee*, 488 F. App'x 27, 33 (6th Cir. 2012). An act is legislative in form if it is an "integral step in the legislative process," and  an act is legislative in substance if it bears "all the hallmarks of traditional legislation, including a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* (quoting *Bogan*, 523 U.S. at 55). Legislative immunity protects any local officials, including executive officials, if their actions are integral to the legislative process. *Bogan*, 523 U.S. at 55. Henderson has the burden to prove that he is protected by legislative immunity. *Guindon*, 488 F. App'x at 33.

It is well established that passing an ordinance is a "purely legislative act." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 438 (6th Cir. 2005) (quotation omitted; *see also Tucker v. City of Richmond*, 388 F.3d 216, 224 (6th Cir. 2004); *Shoultes v Laidlaw*, 886 F.2d 114, 117-18 (6th Cir. 1989) (mayor and council were clearly acting in their legislative capacities in passing zoning ordinance and, thus, absolutely immune from suit where ordinance was subsequently held invalid). The Sixth Circuit has further established that passing a zoning ordinance is a legislative act. *Guindon*, 488 F. App'x at

34. Thus, Henderson is entitled to absolute legislative immunity for voting on and passing Ordinance 13377.

Plaintiff argues that Henderson introduced Resolution 29428 which "set no policy at all, but rather instructed the City attorney to single out Pratt for discriminatory treatment." [Doc. 20, p. 5]. He further contends that when Henderson "introduced, lobbied for, and voted on Resolution 29428, he was engaging in a ministerial, administrative action that is not legislative in form or substances," therefore legislative immunity does not apply. [*Id*. at 6].

Contrary to Plaintiff's arguments, just because an act affects only one person or one piece of property, does not mean the act is not legislative. *See Bogan*, 523 U.S. at 55–56, 118 S.Ct. 966 (finding that legislative immunity protected officials who passed an ordinance that eliminated a government department with only one employee, the plaintiff); *see also Arabbo v. City of Burton*, 689 F. App'x 418, 421 (6th Cir. 2017) (holding that legislative immunity protected officials who voted to reject an individual's proposal that the city help refinance his commercial mortgage); *Collins v. Village of New Vienna*, 75 F. App'x 486, 487–88 (6th Cir. 2003) (holding that legislative immunity protected officials who passed an ordinance that only eliminated plaintiff's job as Village Administrator). Several circuits have also used *Bogan*'s rationale to apply legislative immunity to ordinances that affect individual pieces of property. *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019) (holding that legislative immunity protected officials who passed an ordinance consolidating a roadway into the public-road system); *Sable v. Myers*, 563 F.3d 1120, 1127 (10th Cir. 2009) (holding that legislative

8

immunity protected officials who passed an ordinance condemning a single parcel of land); *Biblia Abierta v. Banks*, 129 F.3d 899, 906 (7th Cir. 1997) (holding that legislative immunity protected officials who passed ordinances that changed the zoning code for specific parcels of property); *see also Strauss v. City of Chicago*, 346 F. Supp. 3d 1193, 1206 (N.D. Ill. 2018).

Legislators enjoy absolute immunity if their actions fall within the sphere of legitimate legislative activity. *Bogan,* 523 U.S. at 54. Legislative immunity will attach in fields where legislators traditionally have power to act. *See Tenney v. Brandhove,* 341 U.S. 367, 379 (1951) (finding defendants were not subject to civil liability); *see also Powell v. McCormack,* 395 U.S. 486, 501-06, 81 (1969) (applying legislative immunity in suit challenging House's refusal to seat an elected member). Matters are within the sphere of legislative activity when they are an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States,* 408 U.S. 606, 625 (1972). Where an official lacks discretion, the duties are likely ministerial, and not legislative. *Bogan*, 523 U.S. at 51; see *also, Morris v. The People,* 3 Denio 381, 395 (N.Y.1846) (noting that the duty was "of a ministerial character only"); *Caswell v. Allen,* 7 Johns. 63, 68 (N.Y.1810) (holding supervisors liable because the act was "mandatory" and "[n]o discretion appear[ed] to [have been] given to the supervisors").

9

Here, Plaintiff acknowledges that Henderson introduced Resolution 29428 at the request of his constituents. [Doc. 1, ¶ 4]. The resolution had to do with zoning, which was clearly within the purview of the City Council as the meeting notes submitted by Plaintiff reference other zoning ordinances also passed by the council at that time. [Doc. 1, Ex. E]. The language of the resolution is on behalf of the City Council as a whole and was passed by the council. [*Id.* at ¶ 27; *see also* Ex. A]. Plaintiff attached the city council meeting minutes from October 9, 2018 [*Id.* at Ex. E] but did not attach the minutes from the April 24, 2018 meeting wherein Resolution 29428 was passed. While a resolution may not have the full force and effect of an ordinance, whether it is ministerial or legislative turns on whether the official had discretion in passing it. *Bogan*, 523 U.S. at 51. Although the Court does not have the actual meeting minutes before it, based on how resolutions were treated at the October 9, 2018 City Council meeting, council members have discretion in passing resolutions and are not merely mandatory decisions. [Doc. 1, Ex. E, pp.6-8]. Thus, Henderson was acting in his legislative capacity when he introduced Resolution 29428 as the resolution was an integral part of the legislative process, and as a member of the council, he had discretion to act on passing the resolution. *See Ford v. Tennessee Senate*, No. 06-2031-BV, 2007 WL 5659414, at *8 (W.D. Tenn. Aug. 15, 2007) (finding that the Senate's act of proposing and voting on a resolution was legislative in nature for the purposes of legislative immunity). Thus, Henderson is entitled to absolute legislative immunity for voting on and passing Resolution 29428.

Based on the above, the Court will **GRANT** Henderson's motion to dismiss as to any claims raised against him in his individual capacity. All claims raised against Henderson in his individual capacity will be **DISMISSED**.

As the Court has determined that Henderson is entitled to absolute legislative immunity, the Court finds it unnecessary discuss the alternative grounds on which Henderson has argued for dismissal in the Motion to Dismiss Supporting Memorandum [Doc. 13].

## IV.    CONCLUSION

Based on the above, Defendant Henderson's Motion to Dismiss [Doc. 12] will be **GRANTED**. This action will be **DISMISSED** as to Defendant Henderson. An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:


_____
s/ Leon Jordan
United States District Judge

11